UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v.  § | NO. 20-CR-641-S2 |
| § | |
| MOHAMMED "MOE" AMER FAISAL AL QAYSI § | |
| Defendant. § | |

## PLEA AGREEMENT

The United States of America, by and through Jennifer Lowery, Acting United States Attorney for the Southern District of Texas, Heather Winter, Assistant United States Attorney, and Joshua Champagne, Trial Attorney, Department of Justice, National Security Division, and the defendant, MOHAMMED "MOE" AMER FAISAL AL QAYSI ("Defendant"), and Defendant's counsel, pursuant to Rule **11(c)(1)(A) and 11(c)(1)(B)** of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count 4 of the Second Superseding Indictment. Count 4 charges Defendant with a Conspiracy to Commit Wire Fraud in violation of Title 18, United States Code, Section 1349. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Second Superseding Indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 1349, is imprisonment of not more than 20 years and a fine of not more than $250,000. Additionally, the defendant may receive a term of supervised release after imprisonment of up to three years. 18 U.S.C. § 3583(b)(1). Defendant acknowledges and understands that if he should

violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for up to two (2) years, without credit for time already served on the term of supervised release prior to such violation. 18 U.S.C. §§ 3559(a)(1) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

**Waiver of Appeal and Collateral Review**

5. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

6. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the Defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing

3

Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

7. Defendant understands and agrees that each and all waivers contained in this plea agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

8. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Count Four of the Second Superseding Indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the Second Superseding Indictment pending against Defendant at the time of sentencing;

(b) If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

## Agreement Binding - Southern District of Texas Only

9. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the Second Superseding Indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

10. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a)   to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)   to set forth or dispute sentencing factors or facts material to sentencing;

(c)   to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)   to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e)   to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

11. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences

imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

12. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

> (a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.
>
> (b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.
>
> (c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

### Factual Basis for Guilty Plea

13. Defendant is pleading guilty because he is in fact guilty of the charge contained in Count Four of the Second Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others, would be offered to establish Defendant's guilt:

   a. Mohammed "Moe" Amer Faisal Al Qaysi, 27, was born in Baghdad, Iraq. Defendant arrived in the United States (US) in August 2010 as an Iraqi refugee. On June 12, 2017, Defendant filed an application with the United States Citizenship and Immigration Services

(USCIS) for naturalization, Form N-400. Currently, Defendant is a U.S. Legal Permanent Resident.

    b.    Defendant conspired with his cousin and co-defendant, Abdulrahman Mohammed Hafedh Alqaysi (Alqaysi), to fraudulently obtain credit card information as early as June 2015. Defendant was aware that Alqaysi used his computer skills to commit crimes, including fraudulently obtaining credit card numbers, stealing identities, working with others to steal monies from those credit cards, and hacking internet websites. Defendant received stolen credit card information from Alqaysi, via interstate communications, online, and over Facebook messenger. The messages referenced herein between Alqaysi and Defendant were in Arabic and have been translated into English.

    c.    On or about June 29, 2015, Defendant, using Facebook, wrote to Alqaysi that he wanted to hack in order to purchase a game. On or about June 30, 2015, Alqaysi suggested he could give Defendant a "hacked Visa card and you can buy it" (the game). Later in the conversation, Alqaysi called himself "the hacker of the State" and sent Defendant an image of a computer keyboard with the ISIS flag laying over it.

    d.    Alqaysi further stated he did not want Defendant to get into trouble, "like the FBI". Alqaysi offered to teach Defendant how to hack. Defendant asked if it was "haram" by religion, asking if the stolen money from the credit cards was forbidden/illegal by religion. Before Alqaysi could respond, Defendant instructed Alqaysi to "find me one". Alqaysi replied, "when I did it I got a warning and the Visa changed".

    e.    In or about August 2015, Alqaysi interacted with Defendant via Facebook multiple times, providing Defendant with several credit card numbers including expiration dates and CVV

codes, as well as the names of the credit card holders and their addresses.

  f. On or about August 19, 2015, Alqaysi interacted with Defendant via Facebook and sent the Defendant the credit card holder name and information associated with Individual #1. Defendant asked what Alqaysi sent him. Alqaysi replied "I will not say what this is - you know what it is". Subsequently, Alqaysi instructed Defendant to "save all and delete the whole chat". Defendant stated "all / deleted". Alqaysi instructed Defendant, "go to the item you want to buy / It asks you to enter a Visa , you need to enter". Shortly thereafter, Defendant stated, "send me the card number and details because this one is messed up I don't know". Alqaysi stated, "this is worthless, there is no money in it".

  g. The following day, Alqaysi interacted with Defendant via Facebook and sent Defendant additional credit card holder names and information, including information associated with Individual #4. At one point, Alqaysi instructed Defendant to "copy, save them and delete the chat quick[l]y" [sic]. After Alqaysi asked Defendant if the credit card worked, Defendant confirmed that it did. Afterwards, Defendant further stated, "there are no / funds / declined". Defendant then instructed Alqaysi to "get me another one / so I can / a newer account".

  h. Individual #4 was interviewed by the FBI. Individual #4 stated he/she did not know Alqaysi or Defendant nor did he/she grant permission for Alqaysi or Defendant to transmit his/her personal information and credit card number. In addition, Individual #4 stated he/she was financially victimized on numerous occasions.

  i. Subsequently on or about August 20, 2015, Alqaysi provided Defendant the credit card holder name and information associated with Individual #6 via Facebook. Defendant claimed that the Visa did not work. Alqaysi stated he was told there were funds on the card and it should

work. Alqaysi stated he used it on a Facebook site. Defendant stated, "there is nothing". Alqaysi informed Defendant to leave it (the card) until tomorrow. Defendant agreed.

j.  Individual #6 was interviewed by the FBI. Individual #6 stated he/she did not know Alqaysi or Defendant nor did he/she grant permission for Alqaysi or Defendant to transmit his/her personal information and credit card number. In addition, Individual #6 stated he/she was financially victimized on numerous occasions. Individual #6 does not reside in Texas and has not traveled to Houston. However, Individual #6 stated some of the fraudulent charges occurred in Texas, such as gas purchases and either a Macys or Amazon charge. Both Alqaysi and Defendant resided in Houston, Texas in August 2015.

k.  On or about August 24, 2015, Alqaysi sent Defendant three additional credit card holders and information associated with Individual #7, Individual #8 and Individual #9 via Facebook. Alqaysi stated, "working a 100%". Defendant stated, "not on my side". Alqaysi stated, "I will try to check it myself". Defendant encouraged Alqaysi by saying, "do it / and send it to me / a picture". Alqaysi said, "ok i will do it on Facebook, not on the site".

l.  On or about September 15, 2015, Defendant, via Facebook, asked Alqaysi to hack a Facebook page. On or about September 16, 2015, Alqaysi said he could not hack for Defendant and referred Defendant to another individual. Alqaysi sent Defendant an image of a hacked social media page of the PMF[1] stamped by an ISIS hacker and with the ISIS flag.

m.  On or about September 20, 2015, Defendant, via Facebook, stated "hey how did you hack it". Alqaysi replied, "professional secret".

---

[1] PMF is the Popular Mobilization Force, an Iraqi state-sponsored umbrella organization.

## Breach of Plea Agreement

14. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Restitution, Forfeiture, and Fines – Generally

15. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

16. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security

information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

17. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

18. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

### Fines

19. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 5 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Complete Agreement

20. This written plea agreement, consisting of 14 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that

no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

21. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on January 16, 2025.

_____
Mohammed Amer Faisal Al Qaysi
Defendant

Subscribed and sworn to before me on January 16, 2025.

NATHAN OCHSNER, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Jennifer Lowery
Acting United States Attorney

By: _____
Heather Winter
Assistant United States Attorney
Southern District of Texas

_____
Brent Mayr
Attorney for Defendant

12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | NO. 20-CR-641-S2 |
| § | |
| MOHAMMED "MOE" AMER FAISAL AL QAYSI § | |
| Defendant. § | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending Second Superseding Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the Court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____
Brent Mayr
Attorney for Defendant

1/16/25
Date

13

I have consulted with my attorney and fully understand all my rights with respect to the Second Superseding Indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____   _1/16/25_____
Mohammed Amer Faisal Al Qaysi        Date
Defendant