UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | NO. 20-CR-641-S2 |
| § | |
| ABDULRAHMAN MOHAMMED HAFEDH ALQAYSI § | |
| Defendant. § | |

## PLEA AGREEMENT

The United States of America, by and through Nicholas J. Ganjei, United States Attorney for the Southern District of Texas, Heather Winter, Assistant United States Attorney, and the defendant, Abdulrahman Mohammed Hafedh Alqaysi ("Defendant"), and Defendant's counsel, pursuant to Rule **11(c)(1)(A) and 11(c)(1)(B)** of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count 9 of the Second Superseding Indictment. Count 9 charges Defendant with a Conspiracy to Provide Material Support to a Designated Foreign Terrorist Organization in violation of Title 18, United States Code, Section 2339B. Defendant also agrees and stipulates that Section 3A1.4 of the United States Sentencing Guidelines (hereinafter "the Guidelines") applies in this case, and further agrees and stipulates not to object to or otherwise oppose the offense level and criminal history category that the application of Section 3A1.4 of the Guidelines imposes on him. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Second Superseding Indictment, or proved to a jury or proven beyond a reasonable doubt.

## Punishment Range

2. The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 2339B, is imprisonment of not more than 20 years and a fine of not more than $250,000. Additionally, the defendant may receive a term of supervised release after imprisonment of up to life. Title 18, U.S.C., Section 3583(j). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then defendant may be imprisoned for up to 5 years, without credit for time already served on the term of supervised release prior to such violation. Title 18, U.S.C. §§ 3559(a)(1) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as

2

denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

## Cooperation

5. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to conspiring to provide material support to a designated foreign terrorist organization. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

    (a)    Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

3

(b) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d) Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e) Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(f) Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

## Waiver of Appeal and Collateral Review

7. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally

attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

10. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Count Nine of the Second Superseding Indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the Second Superseding Indictment pending against Defendant at the time of sentencing;

(b) If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move

5

under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

### Agreement Binding - Southern District of Texas Only

11. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the Second Superseding Indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

12. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

13. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

14. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

   (a)   If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

   (b)   At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn,

Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c)     At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

15. Defendant is pleading guilty because he is in fact guilty of the charge contained in Count Nine of the Second Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others, would be offered to establish Defendant's guilt:

    a.     Defendant, 23, a former Iraqi refugee and a legal permanent resident applied for citizenship in January 2016. He is a self-professed supporter of ISIS, and starting in or about 2015, defendant held himself out as a computer expert for the Islamic State in Iraq and al-Sham ("ISIS"), a designated foreign terrorist organization. Specifically, whether individually or through groups of ISIS supporters, the Defendant attempted to access and disrupt websites, commonly referred to as "hacking," on behalf of ISIS. He provided expertise and services to ISIS through the Kalachnikov Team a.k.a. Kalachnikov Group a.k.a. Kalachnikov E-Security Team ("Kalachnikov Team") and also as part of an umbrella organization for a variety of ISIS supportive groups known as the United Cyber Caliphate ("UCC").

    b.     From approximately March 2015 through 2017, Defendant, held himself out online as someone could provide expertise and services to persons and groups for the purpose of supporting ISIS online. He, among other things, did the following for ISIS: (1) developed logos and posted them online for the Kalachnikov team, (2) provided those logos to those who were hacking social media accounts and websites on behalf of ISIS through the Kalachnikov Team and the UCC, for those individuals to post on the hacked accounts and websites, (3) filed false information and complaints with Facebook against Facebook pages, for the purpose of convincing Facebook to shut down those pages, and used other techniques to shut down Facebook pages, for the benefit of ISIS, (4) provided instructional materials to ISIS supporters and members ranging from materials on hacking to creating logos for the Kalachnikov team, (5) provided stolen credit card information to ISIS members and supporters, and (6) provided fraudulent identity documents, including passports, to ISIS supporters.

c. On or about March 15, 2015, Defendant sent a message that depicted the ISIS flag to an associate on Facebook.

d. On or April 21, 2015, Defendant replied to a member of ISIS, Khalid Jamil Ismail Al Hanoush Al Hamdani ("Al Hamdani"), that he (the Defendant) too was "with the Islamic State."

e. On or about May 7, 2015, Defendant worked with an administrator for an ISIS hacking group, Ayyub Al-Maghribi ("Al-Maghribi") to access and disrupt a Hezbollah website on behalf of ISIS.

f. On May 21, 2015, Defendant messaged Al Hamdani a YouTube video titled "Islamic State Hacker 1," in response to Al Hamdani's request that Defendant create a hacking instructional video.

g. On or about June 7, 2015, Defendant sent a private Facebook message to Al Hamdani containing personally identifiable information ("PII"), including credit card information, for Individual #1, and a YouTube video titled "Instructions on how to buy whatever you want using a stolen Visa 2015" that described how to take credit card information and alter the username and password.

h. On June 11, 2015, Al Hamdani messaged Defendant private messages via Facebook stating his "Caliphate" and [Islamic] "State" accounts were blocked by "American Intelligence." Defendant stated he would support Al Hamdani, meaning that he would, in part, help Al Hamdani obtain more Facebook pages to assist Al Hamdani and ISIS.

i. Around the above timeframe, Defendant communicated via Facebook message with an Iraqi national in Europe who informed the Defendant that he had traveled to Fallujah, Iraq to join ISIS. The Defendant provided technical/online advice and assistance to that user. Alqaysi and the other individual agreed that they wished ISIS would come to the United States.

j. On or about July 15, 2015, Defendant informed a group of Facebook users that he wanted to "create a game for the Islamic State, like use all their publications to create a game."

k. On or about August 5, 2015, Defendant told Al Hamdani via a Facebook message "I am the [Islamic] State's technician / I'm making myself to be a hacker."

l. On or about August 29, 2015, after being asked for a credit card, Defendant sent PII to Al Hamdani, including credit card information belonging to Individual #2, as well as Individual #2's name, address, telephone number, address and email address. But

Al Hamdani was unable to make Individual #2's credit card work, so Defendant sent Al Hamdani PII belonging to Individual #3, including credit card information.

      m.    On September 28, 2015, Defendant admitted to another member of the Kalachnikov Team that he, the Defendant, is also a member of the Kalachnikov Team.

      n.    On or about October 3, 2015, Defendant informed co-conspirator, Mohammad "Moe" Defendant ("Moe"), that he could hack into any foreigner's account, and then forwarded the Facebook accounts of three individuals, whose accounts profile pictures were altered to include the Kalachnikov Team's logo. Defendant had previously created that logo.

      o.    In or about October 2015, Defendant and a person associated with ISIS, al-Mutamarid, discussed creating an online group that Defendant wanted to name "Kalachnikov and the Islamic State." al-Mutamarid wanted Defendant to help recruit "trustworthy brothers" to the Kalachnikov Team. Defendant then created the Facebook group for the purpose of both recruiting and to disseminating pro-ISIS propaganda.

      p.    On October 9, 2015, Alqaysi then shared with an online group a picture (stamp/logo photo), which translates from Arabic as "Kalachnikov Group," that he created along with the group's site inviting the group to join it. Al-Maghribi sent a thumbs up emoji, thus signifying his approval.

      q.    Alqaysi created the Facebook group "Kalachnikov Group," to disseminate pro-ISIS propaganda.

      r.    From October 10, 2015 to October 13, 2015, the Kalachnikov Group continued to discuss hacking and what groups to attack. One member asked Alqaysi to close a Facebook account, meaning to file with Facebook false information or a false complaint about the account, for the benefit of ISIS. Alqaysi agreed. Later, Alqaysi sent a new picture to the Kalachnikov Group titled "Kalashnikov team / Islamic State" (in English).

      s.    On or about November 20, 2015, Defendant planned a cyber-attack of a website in the name of Ansar Al-Dawla Al-Islamiya ("Followers of ISIS") with Umar Adil, an Iraq-based ISIS supporter.

      t.    On or about December 23, 2015, Defendant told an associate on Facebook that he is known as "the State hacker," that he has hacked to the benefit of ISIS that he is the "one who stood with the State against all."

u.  In May 2016, Defendant explained in private Facebook messages that he was part of the Kalachnikov Team. Defendant stated he was the administrator for Kalachnikov, and the group hacked a website and raised the ISIS banner.

v.  On or about May 27, 2016, Defendant informed an associate that he [Defendant] was with the "Islamic State foundation dealing with publications."

w.  On or about May 29, 2016, Defendant posted an image via Facebook which included the ISIS flag and partial images of a logo associated with the Kalachnikov Team. Defendant added in Arabic, "This is my team."

x.  Between approximately May 31, 2016 and June 2, 2016, Defendant engaged in a private group messaging chat with multiple Facebook users where each of the participants believed that this was a private chat of like-minded ISIS supporters. On or about May 31, 2016, Defendant posted in the group chat the PII for Individual #4, including credit card information and added that the credit card "had money on it."

y.  Defendant also used a technique capitalizing on a security vulnerability related to Facebook and a particular e-mail service provider, to reset other users' passwords, gain access to their accounts, and either shut their accounts down or transfer control of their accounts to other individuals, for the benefit of ISIS.

z.  At all times related to the facts herein, Defendant was aware that ISIS engaged in terrorist activity and terrorism, and he supported ISIS.

aa.  On January 14, 2016, Defendant filed with the United States Citizenship and Immigration Services ("USCIS") an application for naturalization, also known as a Form N-400. In that application, in questions 10, 12, and 22, Defendant provided false statements regarding his direct association with ISIS, providing help to any group or organization that used a weapon against any person (such as ISIS), and committing a crime or offense for which he was not arrested.

bb.  In August 2015, Defendant provided Moe with at least nine stolen credit card numbers including expiration dates and CVV codes, as well as the names of the credit card holders and their addresses. The credit card holders did not grant permission for Defendant or Moe to transmit or use their personal information and credit card numbers.

cc.  On or about May 16, 2016, co-conspirator Hami Jamshid ("Jamshid") asked Defendant via Facebook, "Bro did u get the visa" [sic]. Defendant replied, "No not yea I will do it now" [sic]. Jamshid replied, "Ok im waiting bro" [sic]. On or about May 17, 2016, Defendant sent Jamshid a Facebook message containing a credit card number, including a date of expiration, CVV code, and address, for Individuals #5. When Jamshid asked what it was, Defendant replied, "VISA." Jamshid replied with a smiley face emoji

with heart eyes. Later on or about May 17, 2016, Defendant messaged, "tell me if is not working / so i can get u another one / [heart emoji]" [sic].

    dd. From May 2015 to March 2017, the Defendant stole at least 25 credit card numbers, providing those numbers to Moe, Co-defendant, Hami Jamshid, and other friends and associates, including ISIS supporters.

    ee. On December 17, 2004, the United States Department of State designated al Qaeda in Iraq ("AQI") as a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act. On or about May 14, 2014, the United States Department of State amended the designation of AQI as an FTO to add the ISIS alias as AQI's primary alias. To date, and through the time period relevant to the charges contained in the Second Superseding Indictment, ISIS has remained a designated FTO.

## Breach of Plea Agreement

16. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Restitution, Forfeiture, and Fines – Generally

17. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of

property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

18. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

19. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

20. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

**Fines**

21. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay

payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

## Complete Agreement

22. This written plea agreement, consisting of 17 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him/her and that he is pleading guilty freely and voluntarily because he is guilty.

23. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on \_\_\_\_3/7\_\_\_\_, 2025.

_____
Abdulrahman Mohammed Hafedh Alqaysi

Subscribed and sworn to before me on \_\_\_\_3/7/\_\_\_\_, 2025.

NATHAN OCHSNER, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Nicholas J. Ganjei
United States Attorney

By: _____      _____
Heather Winter                                                Nicole DeBorde Hochglaube
Assistant United States Attorney                 Attorney for Defendant
Southern District of Texas

15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § § | |
| v. § § | NO. 20-CR-641-S2 |
| ABDULRAHMAN MOHAMMED HAFEDH ALQAYSI § § Defendant. | |

PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending Second Superseding Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____
Nicole DeBorde Hochglaube
Attorney for Defendant

_3/7/25_____
Date

I have consulted with my attorney and fully understand all my rights with respect to the Second Superseding Indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____   3/7/25
Abdulrahman Mohammed Hafedh Alqaysi   Date
Defendant